UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Hai Long Li, Individually and on behalf of All Other
Employees Similarly Situated,

                                Plaintiff,

                - against -

Patina Restaurant Group, LLC, d/b/a The Sea Grill, Raroc,
LLC and Delaware North Companies, Inc.

                                Defendants.

---

Case No.

**COLLECTIVE
AND CLASS ACTION
COMPLAINT**

---

Plaintiff Hai Long Li, on his own behalf and on behalf of all others similarly situated, by and through his undersigned attorneys, Hang & Associates, PLLC, hereby files this complaint against the Defendant Patina Restaurant Group, LLC, d/b/a The Sea Grill, Raroc, LLC and Delaware North Companies, Inc. (collectively "Defendants"), alleges and shows the Court the following:

## INTRODUCTION

1.      This is an action brought by Plaintiff on his own behalf and on behalf of similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") the New York Labor Law ("NYLL") arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiff overtime compensation for all hours worked over forty (40) each workweek.

3.      Upon information and belief, Defendants willfully and intentionally misclassified Plaintiff and all other members of the proposed Classes as salaried, exempt employees, at all times in which they worked as "Sous Chefs". Defendant's improper classification resulted in the failure to properly compensate its Sous Chefs with overtime pay as required under applicable federal law.

4.      Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

5.      Plaintiff further alleges pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) unpaid "spread of hours" premium for each day they worked ten (10) or more hours, (3) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL (4) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime pursuant to the NY Wage Theft Prevention Act; (5) prejudgment and post-judgment interest; and (6) attorney's fees and costs.

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

2

8.      Plaintiff Hai Long Li ("Li") is a resident of Fort Lee, NJ and was employed by The Patina Restaurant Group, LLC and Raroc, LLC as a sous chef at Defendant's restaurant located at 19 W 49th Street, New York, NY 10020 from April 23, 2003 to present.

## DEFENDANTS

9.      Defendant Patina Restaurant Group, LLC ("Patina") is a Delaware corporation registered with the New York State Department of State to receive service of process at 111 Eighth Avenue, New York, NY 10011.

10.      Patina owns and/or operates numerous restaurants in New York City including The Sea Grill, a seafood restaurant located at 19 W 49th Street, New York, NY 10020.  In addition to The Sea Grill, Patina operates and manage  A-list restaurants and nightclubs in New York City such as "The Rink at Rockefeller Center," "Cafe Centro," "Brasserie," "The Beer Bar," and "Stella 34 Trattoria." Patina also owns and operates numerous restaurants in Los Angeles, California, Livingston, New Jersey, Bethesda, Maryland, Walt Disney World, Tokyo, Japan and other locations.

11.      At all relevant times, Patina was an "employer" within the meaning of all applicable statutes, and an enterprise engaged in commerce as defined by § 203(r) and (s) of the FLSA, with annual gross volume business done in an amount not less than $500,000.

12.      Defendant Raroc, LLC is a Delaware limited liability company, which is registered with the New York State Department of State to receive service of process at 111 Eighth Avenue, New York, NY 10011.

13.      Upon information and belief, Raroc, LLC owns and/or operates The Sea Grill, located at 19 W 49th Street, New York, NY 10020.

14.     At all relevant times, Raroc, LLC was an "employer" within the meaning of all applicable statutes, and an enterprise engaged in commerce as defined by § 203(r) and (s) of the FLSA, with annual gross volume business done in an amount not less than $500,000.

15.     Defendant, Delaware North Companies, Inc. ("DNCI") is a Delaware corporation registered with the New York State Department of State to receive service of process at 111 Eighth Avenue, New York, NY 10011.

16.     DNCI is a global leader in hospitality and food service who operates companies in the lodging, sporting, airport, gaming and entertainment industries.

17.     DNCI's principal executive office is located at 250 Delaware Avenue Buffalo, New York, 14202-2200.

18.     Upon information and belief, DNCI owns and/or operates The Sea Grill, located at 19 W 49th Street, New York, NY 10020.

19.     At all relevant times, DNCI was an "employer" within the meaning of all applicable statutes, and an enterprise engaged in commerce as defined by § 203(r) and (s) of the FLSA, with annual gross volume business done in an amount not less than $500,000.

## CORPORATE DEFENDANTS AS SUCCESSOR EMPLOYERS AND/OR JOINT EMPLOYERS

20.     Upon information and belief, at all times relevant to this action, Defendants either do or did business as The Sea Grill as joint employers concurrently or as successor employers or both.

21.     In either case, corporate Defendants are jointly and severally liable to minimum wages and overtime compensation owed to Plaintiff and similarly situated employees.

22.     Upon information and belief, at all times relevant to this action, Defendants do or did business as The Sea Grill, engaged in substantially the same work in substantially the same working conditions under substantially same supervisors.

23.     Upon information and belief, Corporate Defendants are considered the same employer under the New York Anti-Shirt Changer Law, NYLL §219.4, because "employees or the subsequent employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors."

24.     Upon information and belief, at all times relevant to this action, if Corporate Defendants do or did business as The Sea Grill as joint employers concurrently, they are joint employers because they concurrently engage employees to work for The Sea Grill, and share substantially the same management and control over the restaurant.

25.      The Corporations that do business as The Sea Grill are joint employers of Plaintiff and constitute an enterprise as is defined by 29 USC §203( r ) insofar as the three establishments operate under the same NYC Restaurant Inspection certificate and/or insofar as three corporations do business as "The Sea Grill"  restaurant concurrently, and thus share the same waiters, kitchen workers, and chefs, pay Plaintiff as shareholders of The Sea Grill, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same owners.

26.     At all times relevant herein, Defendants were, and continue to be, an "enterprise engaged in commerce" within the meaning of FLSA.

27.     At all relevant times, the work performed by Plaintiff was directly essential to  the business operated by Defendants.

28.     At all relevant times, Defendants knowingly and willfully misclassified Plaintiff and failed to pay him his lawfully earned overtime compensation and spread-of-hour premiums, and failed to provide him proper wage notice at the time of hiring in violation of the NYLL.

29.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

## STATEMENT OF FACTS

30.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

31.     Plaintiff worked as a sous chef for the Defendants' restaurant The Sea Grill located at 19 W 49th Street, New York, NY 10020 from April 23, 2003 to present.

32.     Plaintiff would spend a small proportion of his day checking orders and communicating with other kitchen staff regarding which items needed to be cooked. Plaintiff, however, spent his time primarily in cooking and handling other miscellaneous tasks.

33.     Plaintiff did not have hiring, firing, disciplining or scheduling authority over other employees.

34.     Plaintiff does not have a culinary degree.

35.     Plaintiff's duties as a salaried sous chef did not differ substantially from the duties of non-exempt hourly paid cooks and kitchen employees, which included cooking and preparing food.

36.     Plaintiff did not exercise a meaningful degree of independent discretion with respect to the exercise of his duties, nor did he have the authority to modify or alter recipes in the kitchen.

37.     Plaintiff did not manage any part or subdivision of the kitchen, including the

Japanese cuisine department.

38.     On a daily basis, upon arrival at the restaurant, Plaintiff would first spend around four hours doing tasks including but not limited to : checking if the refrigerators  and ovens are working properly and informing the maintenance department for repair if needed; turning on lights, sorting out inventories and putting them into corresponding sections in the fridges; fetching ingredients from the storage or fridge for chefs to use according to their demand; cutting and portion fish and vegetables and send the fish to chefs in French or Japanese cuisine departments; preparing for large amount of sushi to be served at lunch time.

39.     During lunch time of the restaurant, Plaintiff would normally make Japanese cuisine at the kitchen. He would occasionally help expediting orders he received from the wait-staff to chefs.

40.     After lunch time, Plaintiff would help other chefs figure out what and how many ingredients they were in short, and send such information to the storage staff for them to make purchase. Plaintiff would then again fetch ingredients from the storage or fridge for chefs according to their demand, cut fish and vegetables, dispatch the cut fish to chefs in French or Japanese cuisine departments before he left work.

41.     Consistent with Defendants' policy and pattern or practice, Plaintiff regularly worked in excess of 40 hours per workweek without being paid overtime wages.

42.     Defendants knew that the nonpayment of overtime pay, spread of hours pay, and failure to provide proper wage notice at the time of hiring would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

43.     Throughout his employment with Defendants, Plaintiff was misclassified as exempt and paid a fixed annual salary regardless of the number of hours worked.

44.     Between September 13, 2011 to September 12, 2017, Plaintiff did not receive any overtime premiums despite working in excess of forty (40) hours per week.

45.     Between September 13, 2011 to September 12, 2017, Plaintiff normally worked from Monday to Friday for five days with Saturdays and Sundays off. However, during summer time[1] and/or the holiday seasons[2], Plaintiff would also work on Saturday and worked six days per week.

46.     In 2011 and 2012, Plaintiff's daily shift started from 6:30 a.m. and ended at 5:30 p.m., occasionally at 6:30 p.m. per week. He therefore worked at least fifty-five (55) hours during the non-holiday period, and sixty-six (66) hours during the holiday season that lasted from November 11 to around January 1, 2012.

47.     In 2013, Plaintiff's daily shift started from 7:00 a.m. and ended at 5:30 p.m., occasionally 7:00 p.m. per week. He therefore worked at least fifty-two and thirty minutes (52.5) during the non-holiday period, and sixty-three (63) hours during the holiday season that lasted from around November 3 to around January 1, 2013.

48.     In 2014, Plaintiff's daily shift started from 7:00 a.m. and ended at 5:00 p.m. between January and September 13 with a total of fifty (50) working hours per week; but from 6:30 a.m. to 5:00 p.m. (occasionally 6:00 p.m.) between September 15 and November 8 with a total of fifty-two hours and a half (52.5) working hours per week, and sixty-three (63) hours per week during the holiday season that lasted from November 9 to December 31.

---

[1] Normally lasts two weeks in June.
[2] The length of the holiday seasons slightly varied from year to year.

49.     In 2015, Plaintiff's daily shift started from 7:30 a.m. and ended at 5:30 p.m. with a total of fifty (50) working hours per week during the non-summer/holiday period, and sixty (60) hours per week during the summer time in June and holiday season from November to December.

50.     In 2016, Plaintiff's daily shift started from 7:00 a.m. and ended at 5:30 p.m. with a total of fifty and a half hours (52.5) working hours per week during the non-summer/holiday period; but from 6:30 a.m. to 5:30 p.m. with a total of sixty-six (66) hours per week during the summer time and the holiday season from November to December.

51.     In 2017, Plaintiff's daily shift started from 7:00 a.m. and ended at 5:00 p.m. with a total of fifty hours (52.5) working hours per week between January and June; but from 7:00 a.m. to 4:30 p.m. with a total of forty-seven and a half (47.5) hours per week between July and September 13, 2017.

52.     Plaintiff was paid an annual salary at $55,664.02 in 2011; a fixed weekly salary at $1,272.84 in 2012; an annual salary at $58,220.07 in 2013; a fixed weekly salary at $1,320.57 in 2014; an annual salary at $62,132.46 in 2015; an annual salary at $63,538.45 in 2016; and a fixed weekly salary at $1,471.89 in 2017.

53.     Defendants did not use any tools or methods to keep record of the hours Plaintiff worked, including but not limited to punch card system and sign-in-and-out sheets.

54.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

55.     While employed by Defendants, Plaintiff was not actually exempt under federal and state laws requiring employers to pay employees overtime.

56.     Plaintiff's workdays frequently lasted longer than 10 hours.

57.     Defendants did not pay Plaintiff "spread of hours" premium for every day in which she worked over 10 hours.

58.     Defendants did not provide Plaintiff with proper written notices about the terms and conditions of his employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay. These notices were similarly not provided upon Plaintiff's and other Class members' pay increase(s).

59.     Plaintiff was never given a correct statement on each wage payment, listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

60.     Defendants committed the foregoing acts against the Plaintiff and the FLSA Collective Plaintiffs and the Class.

## COLLECTIVE ACTION ALLEGATIONS

61.     Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute his FLSA claim as a collective action on behalf of all persons who are or were formerly employed by Defendants as a sous chef and other similarly situated current and former employee holding comparable positions but different titles, at any time from September 2014 to the entry of judgment in this case (the "Collective Action Period").

62.     Defendants are liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiff and other sous chefs.

63.     There are many similarly situated current and former sous chef (and other employees holding comparable positions but different titles) who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This, Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. §216 (b).

64.     Those similarly situated employees are known to Defendants, are readily identifiable and can be located through Defendants' records.

65.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

66.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiff and other similarly situated employees.

67.     Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than twenty (20) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or

knowledge of their claims. Therefore, Plaintiff submits that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

68.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

69.     This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

70.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

71.     Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b.  Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

c. Whether the Defendants failed to pay the Collective Action Members spread of hours payment for each day an employee worked over 10 hours;

d. Whether the Defendants failed to comply with the notice and record keeping requirements of the FLSA;

e.  Whether the Defendants have a policy of misclassifying sous chefs as exempt from the coverage of the overtime provisions of the FLSA;

f. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

g. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

72.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

73.    Plaintiff and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

### CLASS ACTION ALLEGATIONS

74.    Plaintiff brings his NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all salaried, exempt employees, at all times in which they worked as "Sous Chefs" or equivalent positions for Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

75.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P 23.

76.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

77.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendant, as alleged herein, of misclassification and failure to pay overtime compensation. Defendant's corporation wide policies and practices, including but not limited to their  failure  to provide proper wage notice at the time of hiring, affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

78.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced

and competent in representing plaintiff in both class action and wage and hour employment litigation cases.

79.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

80.     Upon information and belief, defendant implemented its unlawful wage and hour practice in all of its stores throughout the state in violation of the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

81.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b. Whether Defendants failed to properly pay Plaintiff and Class members the New York overtime rate for all hours worked in excess of 40 hours per week;

c. Whether Defendants maintained a policy, pattern and/or practice of willfully misclassifying Plaintiff and the Class/Collective Action Members as exempt from the requirements of the NYLL;

d. Whether the Defendants failed to fully comply with the notice and record keeping requirements of NYLL §§198(b) and 198(d);

e. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work.

16

## STATEMENT OF CLAIM

### COUNT I
**[Violations of the Fair Labor Standards Act—Overtime Wage
Brought on behalf of the Plaintiff and the FLSA Collective]**

82.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

84.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

85.     Defendants' failure to pay Plaintiff and the FLSA Collective Action Members their overtime pay violated the FLSA.

86.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

87.     The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

88.     Defendants willfully failed to notify Plaintiff and FLSA Collective Action Members of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

89.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Action Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II
### [Violation of New York Labor Law—Overtime Pay]

90.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.     Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

92.     Defendants' failure to pay Plaintiff Defendant's failure to properly pay Plaintiff and the Rule 23 Class their overtime pay violated the NYLL.

93.     Defendants' failure to pay Plaintiff was not in good faith.

## COUNT III
### [Violation of New York Labor Law—Spread of Time Pay]

94.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

95.     The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, et seq., and §§650, et seq., and New York State Department of Labor regulations §146-1.6.

96.     Defendants' failure to pay Plaintiff and the Rule 23 Class their spread-of-hours pay was not in good faith.

97.     Defendants' failure to pay Plaintiff and the Rule 23 Class their spread-of-hours pay violated the NYLL.

**COUNT IV**
**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement]**

98.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

99.     The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

100.    Defendants intentionally failed to provide conforming notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or his first day of employment.

101.    Defendants provided deficient notice to each class member at Time of Hire, and

failed to provide conforming notice to Plaintiff even after the fact.

102.    Due to Defendants' violations of New York Labor Law, Plaintiff and the class members are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

### COUNT V
### [Violation of New York Labor Law—New York Pay Stub Requirement]

103.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

105.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of Plaintiff and class members, and provided a deficient and confusing paystub on or after each of Plaintiff's payday.

106.    Due to Defendants' violations of New York Labor Law, Plaintiff and class members are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for Plaintiff and each class member together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

### Prayer For Relief

WHEREFORE, Plaintiff, on behalf of himself, and the FLSA collective Plaintiffs, respectfully request that this court enter a judgment providing the following relief:

a)    Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed

by defendants as salaried, exempt employees, at all times in which they worked as "Sous Chefs" or similar position. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)    Designation of Plaintiff as representatives of the Rule 23 Class, and counsel of record as Class counsel;

d)    Certification of this case as a collective action pursuant to FLSA;

e)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

f)    A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

g)    An injunction against Defendants its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)    An award of unpaid overtime wages due under FLSA and New York Labor Law;

i)    An award of unpaid "spread of hours" premium due under the New York Labor Law;

j)    An award of damages for Defendants' failure to provide proper wage notice at the time of hiring as required under the New York Labor Law.

k)     An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages, overtime compensation pursuant to 29 U.S.C. §216;

l)     An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to pay wages, overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

m)     An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

n)     The cost and disbursements of this action;

o)     An award of prejudgment and post-judgment fees;

p)     An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation, and other benefits of employment.

q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

r)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
      September 15, 2017

                HANG & ASSOCIATES, PLLC.

                */S/ JIAN HANG*
                Jian Hang, Esq.
                136-18 39th Ave., Suite 1003
                Flushing, New York 11354
                Tel: 718.353.8588
                jhang@hanglaw.com
                *Attorneys for the Plaintiff and the Putative*
                  *Collective Class*

# EXHIBIT I

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by The Patina Restaurant Group, LLC, RaRoc LLC, Geoff Gljiva, Antonio Pontelli and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*Hailongli*
_____
Full Legal Name (Print)

_____
Signature

09/11/2017
_____
Date

# EXHIBIT II

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND
MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE
BUSINESS CORPORATION LAW**

TO:  Patina Restaurant Group, LLC
     111 Eighth Avenue
     New York, NY 10011

    PLEASE TAKE NOTICE, that Hai Long Li and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

    HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

    Dated: September 15, 2017

27

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO:  Raroc, LLC
      111 Eighth Avenue
      New York, NY 10011

      PLEASE TAKE NOTICE, that Hai Long Li and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

      HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

      Dated: September 15, 2017

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND
MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE
BUSINESS CORPORATION LAW**

TO:  Delaware North Companies, Inc.
       250 DELAWARE AVENUE
       BUFFALO, NEW YORK, 14202-2200

PLEASE TAKE NOTICE, that Hai Long Li and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: September 15, 2017