# HANG & ASSOCIATES, PLLC

ATTORNEYS AT LAW
136-20 38th Avenue, Ste. 10G
Flushing, New York 11354

Jian Hang
Keli Liu
+1 (718) 353-8588 (t)
+1 (718)353-6288 (f)
jhang@hanglaw.com
Kliu@hanglaw.com

December 6, 2018

Hon. Edgardo Ramos
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Via ECF

Re:   *Li et al v. Patina Restaurant Group, LLC et al*, 1:17-cv-07058

Dear Judge Ramos,

      This firm represents the Plaintiff Hai Long Li (the "Plaintiff" or "Li") in the above-entitled action. We write, jointly with the Defendants Patina Restaurant Group, LLC, RAROC, LLC, and Delaware North Companies (the "Defendants") (all, together where appropriate, as "the Parties"), to explain the terms of the Parties' settlement with respect to Plaintiff's FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1] A copy of the signed settlement agreement is annexed herein as **Exhibit A**.

---

[1] While Plaintiff also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), settlement of those claims does not require court approval for dismissal. *See, e.g., Yunda v. SAFI-G, Inc.*, 2017 WL 1608898, at *1 (S.D.N.Y. Apr. 28, 2017) (citing *Abrar v. 7-Eleven, Inc.*, 2016 WL 1465360, at 81 (E.D.N.Y. Apr. 14, 2016) (". . . the NYLL settlement agreement does not require judicial approval.").

1

I.   **BACKGROUND**

a.   ***The facts as set forth by Plaintiff***

Employment Duration and Job Title

Plaintiff is a former Sushi Chef/Sous Chef [2] at Defendants' fine dining Seafood restaurant Sea Grill located at 19 West 49th Street, New York, New York ( the "Sea Grill" or "Restaurant") . Plaintiff worked at Sea Grill from April 23, 2003 to September 2017 and was classified and paid as a salaried employee during his tenure at the Sea Grill.

Plaintiff was hired to work as a Sushi Chef, however, because Sea Grill did not have the official position for "Sushi Chef" at the time, Plaintiff worked under the title of "Sous Chef". Plaintiff understood his job responsibilities to be only to make sushi at the time of his hiring. In practice, however, Plaintiff was required to work as both a sushi chef and a Sous Chef from the early years of his employment and had to perform all the mundane tasks come with both positions. The confusion with regard to Plaintiff's work title and his actual job responsibilities carried throughout Plaintiff's time at Sea Grill and lasted towards the very end of Plaintiff's tenure.

Plaintiff commenced the instant matter on September 15, 2017[3], alleging that he was misclassified and seeks unpaid overtime wages, "spread of hours" pay, and damages for wage notice and wage statements violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL").

Days/Hours Worked

Between September 13, 2011 to September 12, 2017, Plaintiff did not receive any overtime premium despite working in excess of forty (40) hours per week. Plaintiff normally worked from Monday to Friday for five days with Saturdays and Sundays off. However, during summer time[4] and/or the holiday seasons[5], Plaintiff would also work on Saturday and worked six days per week. Throughout his employment, Plaintiff regularly worked over 50 hours a week. [6]

Compensation Received

Plaintiff was paid an annual salary at $55,664.02 in 2011; a fixed weekly salary at $1,272.84 in 2012; an annual salary at $58,220.07 in 2013; a fixed weekly salary at $1,320.57 in 2014; an annual salary at $62,132.46 in 2015; an annual salary at $63,538.45 in 2016; and a fixed weekly salary at $1,471.89 in 2017.

---

[2] This was not Li's official title until August 2016.
[3] The relevant period for the instant matter therefore goes back to September 2011.
[4] Normally lasts two weeks in June.
[5] The length of the holiday seasons slightly varied from year to year.
[6] It wasn't until 2017, Plaintiff started to have work shifts that renders around 47 hours of work per week.

Based on the alleged facts above, Plaintiff contend that Defendants failed to properly compensate him for all the hours he worked over 40.

### b. The facts as set forth by Defendants

Plaintiff is a former Sous Chef of The Sea Grill, which is located in Rockefeller Center and known as one of New York's premiere seafood restaurants, and was employed from about April 23, 2003 until he resigned, his last day being September 15, 2017. The scope of Plaintiff's responsibilities fell within two areas: being the "opening" Sous Chef, and managing and running the sushi program. As he described in his own words in his annual self-evaluation, Plaintiff's job was "manag[ing] all the daily activities in the kitchen including acquiring inventories."

Specifically, during his career at The Sea Grill, Plaintiff created and grew the sushi program, and was the sole chef responsible for the developing and running it. Plaintiff enjoyed full discretion over the sushi program, including staffing decisions and selection of sushi chefs who reported directly to Plaintiff, the creation of sushi recipes, and making daily menu adjustments based on inventory and ingredients. Plaintiff was also primarily responsible for maintaining appropriate inventory levels and setting pricing of menu items for the sushi department. Typically, the sushi program consisted of Plaintiff and 2 sushi chefs who were directly supervised by Plaintiff, and who Plaintiff had authority to hire/fire, discipline, and had responsibility for all training and performance management.

In addition to Plaintiff's management responsibility for the sushi program, Plaintiff's was the "opening" Sous Chef. In this role, Plaintiff was responsible for ensuring staffing levels in the morning (based on Union seniority requirements and rules) and was responsible for addressing any issues with staff punching in/out properly, with manager-level access to the system. Additionally, Plaintiff performed morning walk-throughs and pre-checks, which included ensuring all equipment and refrigerators were working properly, and if not, Plaintiff had full discretion and authority to address any and all issues. Plaintiff also had discretion and authority over all daily orders for the restaurant (beyond just the sushi program), which included dry goods, fish, meat, poultry, vegetables, paper goods, and other supplies, as needed.

Ultimately, Plaintiff's day-to-day duties comprised of many of the "classic" managerial tasks identified in the governing regulations that define the "executive" exemption from overtime: interviewing, selecting, and training of employees; setting and adjusting their work schedules; directing the work of the sushi chefs as well as other kitchen staff; appraising the productivity and efficiency of the sushi chefs, and other kitchen staff, for the purpose of managing performance and making employment decisions/recommendations; authority to discipline employees; planning the work; determining the techniques to be used; and controlling and operating within the budget. *See* 29 C.F.R. § 541.102 (listing classic management tasks for an overtime-exempt position).

Furthermore, Plaintiff's primary responsibility was running the sushi program and running the restaurant as a whole in the morning; his primary responsibility was not cooking (regardless that Plaintiff might have to pitch in periodically during busy periods and when the restaurant was short-staffed, and noting that Plaintiff would have been barred from covering a full shift due to Union rules). *See Scott v. SSP Am., Inc.*, 2011 WL 1204406, at *10 (E.D.N.Y.

Mar. 29, 2011) (finding that plaintiff, a Unit Manager over several restaurants at JFK airport, was a bona fide executive even though from time to time she helped with the cooking and cleaning, and other non-exempt tasks, to help prevent the hourly employees from being overworked). Although Plaintiff worked within the bounds set by the Executive Chef and the company, which included setting Plaintiff's schedule and overall work responsibilities, Plaintiff nevertheless exercised his judgment in a variety aspects of his job that qualified him for the executive exemption as a manager.

Accordingly, Plaintiff held a management-level position (as recognized by the, with management-level discretion, responsibilities, and compensation, and was therefore eligible for exemption under the FLSA and NYLL.

## II.   THE SETTLEMENT TERMS ARE FAIR AND REASONABLE

### a. Standard of Review

Under the FLSA, parties cannot settle claims without the approval of a district court or the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Court may approve the settlement where it finds the agreement is "fair and reasonable." *See Flores v. Food Express Rego Park, Inc.*, No. 15 CV 1410 (KAM), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016). As set forth herein, the Court should approve the instant settlement agreement as it is a fair and reasonable settlement that was the result of arms-length mediation with a neutral mediator, and constitutes a fair compromise of a bona fide dispute over the claims in this matter. *See Zhang v. Joy's Hair Studio, Inc.*, No. 13 CV 3220 (RRM) (RML) at * 1 (E.D.N.Y. June 21, 2016).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiffs range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

### b. Range of Possible Recovery

Defendants allege that Plaintiff was properly classified as an exempt employee under the executive exemption under the FLSA and NYLL. They allege that Plaintiff had substantive managerial authorities over the Sushi department and that he had authorities to hire and fire employees for the Sushi department. If Defendants were to prevail on all of their defenses, the amount of damages owed to Plaintiffs would be zero dollar. If Plaintiff prevail on all his claims, he would be entitled to back pay of around $198,614.29.

### c. Avoiding Burdens and Potential Risks of Continued Litigation

The legal disputes presented risk to Plaintiff's full recovery of the damages outlined above. As preliminary disclosure, Defendants produced over one hundred pages of internal documents including employee handbook, work schedules and pay records. Plaintiff also produced communications he had with the Defendants' supervisors regarding his duties and pay. The evidence suggest a risk on both sides to establish their prospective claims and defenses at trial. The parties made meaningful progress towards the settlement at a mediation session with mediators Elena J. Voss and Susan Salazar, and ultimately reached a settlement subsequent to the mediation.

In accepting the settlement, the Parties considered the strengths and weakness of their respective claims and defenses, given these uncertainties and the delays involved in litigating the case to a jury trial and possible appeals, the settlement amount of $75,000 is fair and reasonable.

### d. Arm's-Length Bargaining, No Fraud or Collusion, No *Cheeks* Admonishments

The settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case. The parties are represented by experienced Counsel, and the settlement, although not reached at the mediation, was largely attributable to the progress the parties made with the mediators Elena J. Voss and Susan Salazar. The settlement was reached only after substantial paper discovery was exchanged. The presence of a court-appointed mediator "provides assurance that the settlement was not the product of collusion." *Bilbao v. LCS Enters. Inc.*, 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); *see also Hernandez v. Anjost Corp.*, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618-19 (S.D.N.Y. 2012) (citing *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 159–60 (S.D.N.Y.2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). There was thus no fraud or collusion here.

### e. The "General Release " provision should be approved

In FLSA litigation, a general release is permissible under certain circumstances.  As this Court explained in *Souza v. 65 St. Marks Bistro*, parties in wage and hour cases often hope to achieve "a resolution of all claims, including any other claims that they may have against each other (whether pled or unpled in the complaint or in any counterclaims) so that they do not have to litigate against each other in the future." *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015). A general release involving "former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure." *Id.*; *see also Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (commenting that "the plaintiffs here are no longer employees of the defendants, reducing the danger that the release was obtained through improper job-related pressure"). Furthermore, where parties are represented by counsel, "it is hard to understand how a general release would confer an unevaluated and uncompensated benefit to the employer if, to justify the settlement,

5

a lawyer has to represent to the court that the lawyer has explored other potential claims with the employee and the employee, with counsel's aid, can identify no additional basis to sue the employer and also acknowledges that she is forfeiting any claims currently unknown to her." *Souza*, 2015 WL 7271747, at *7.

Here, the parties have no ongoing relationship as of Plaintiff's resignation from employment, effective September 15, 2017, and lack of any further contact outside of this litigation since then. There is therefore no potential for pressure resulting from an ongoing employment relationship. The parties also seek for this settlement to effect a complete resolution of all claims, asserted and potential, so that they can fully avoid the possibility of further litigation against each other. Indeed, the full and complete closure of all asserted and potential claims was a significant and material component of the parties' negotiations and agreement. Notably, this agreement does not include a release of claims by putative class members. Throughout this litigation and their negotiations, the parties were represented by experienced counsel and settlement is the product of arms-length bargaining, which included a mediation and additional negotiations between counsel. Thus, under the circumstances present here, the parties' agreement should be approved.

### f. The Requested Attorneys' Fees and Costs are Reasonable.

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $24,801.073 and expenses and costs is $631.93, limited to one-third of the total net settlement amount, attorney's fees calculated after deducting for expenses and costs. Plaintiff's counsel's request that the Court approve fees of one-third of the total net settlement is "consistent with the trend in this Circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); *Ezpino*, 2017 WL 3037483, at *3 (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)) ("'A one-third contingency fee is a commonly accepted fee in this Circuit.'"); *Kochilas*, 2015 WL 5821631, at *8 (collecting cases). Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See Ezpino*, 2017 WL 3037483, at *3 (approving request for fees at a "contingent rate of one-third"); *see also Cregg v. Firstservice Residential N.Y., Inc.*, Docket No. 15-cv-3876-LB, D.E. 14, at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); *Calle*, 2014 WL 6621081, at *3 ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand*

*St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

### IV.   CONCLUSION

Given the foregoing, it is respectfully requested that the Court approve the settlement agreement annexed hereto as Exhibit A.

Respectfully submitted,

*/s/ Keli Liu*
Keli Liu., Esq.